IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JAMECA BILLS,**
**o.b.o., M.J.B., minor,**

      **Plaintiff,**

                                      Civil Action 2:18-cv-1554
      v.                             Judge Michael H. Watson
                                      Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jameca Bills ("Plaintiff"), who is proceeding on behalf of her minor child, M.J.B., brings this action under 42 U.S.C. § 1382c(a)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying M.J.B.'s application for child's supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff protectively filed an application for child's supplemental security income on behalf of M.J.B. on January 23, 2015. The application was denied initially on August 10, 2015, and on reconsideration on December 8, 2015. Subsequently, a hearing was held before Administrative Law Judge Jeffrey Hartranft (the "ALJ") on August 3, 2017, at which Plaintiff and M.J.B., represented by counsel, appeared and testified. The ALJ issued a decision on February 26, 2018, denying benefits. (R. at 130-45.) On October 1, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.

Plaintiff filed the instant action on December 3, 2018. In her Statement of Errors, Plaintiff asserts that the ALJ failed to appropriately consider M.J.B.'s teacher questionnaires at step three of the sequential analysis and, as a result, erred in concluding that M.J.B.'s impairments do not functionally equal the listings. (ECF No. 10.)

## II. RELEVANT EVIDENCE

### A. Teacher Questionnaires

Two unidentified sources from Graham Primary School completed teacher questionnaires on behalf of M.J.B. (R. at 683-98.) The first teacher ("Teacher 1") stated that she has known M.J.B. for 19 months, and that she saw her 5 days each week, for all subjects. (R. at 683.) Teacher 1 stated that M.J.B. was in first grade, had a kindergarten reading level, and a first-grade math and written language level. Teacher 1 assessed M.J.B. in the relevant six domains of functioning. With respect to acquiring and using information, she opined that M.J.B. had an "obvious problem" comprehending oral instructions, understanding school and content

2

vocabulary, providing organized oral explanations and adequate descriptions, learning new material, and recalling and applying previously learned material; a "very serious problem" reading and comprehending written material; "no problem" understanding and participating in class discussions; and a "slight problem" comprehending and doing math problems, expressing ideas in written form, and applying problem-solving skills in class discussions. (R. at 684.) When asked to provide additional information about M.J.B.'s problems with these activities, Teacher 1 simply stated, "[M.J.B.] receives services from an Intervention Specialist." (*Id.*)

With respect to attending and completing tasks, Teacher 1 opined that Plaintiff has a "very serious problem" with refocusing to task when necessary and working at reasonable pace/finishing on time; a "serious problem" focusing long enough to finish assigned activity or task, carrying out multi-step instructions, and waiting to take turns; "obvious problems" sustaining attention during play/sports activities, carrying out single-step instructions, changing from one activity to another without being disruptive, organizing own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, and working without distracting self or others; and a "slight problem" paying attention when spoken to directly. (R. at 685.)

In the domain of interacting and relating with others, Teacher 1 found that Plaintiff has a "serious problem" seeking attention appropriately and expressing anger appropriately; a "slight problem" playing cooperatively with other children, asking permission appropriately, taking turns in a conversation, and interpreting meaning of facial expression, body language, hints, and sarcasm; and "no problem" making and keeping friends, following rules, respecting/obeying adults in authority, relating experiences and telling stories, using language appropriate to the

3

situation and listener, introducing and maintaining relevant and appropriate topics of conversation, and using adequate vocabulary and grammar to express thoughts/ideas in everyday conversation. (R. at 686.) She stated that she can understand 1/2 to 2/3 of M.J.B.'s speech if the topic is known; no more than 1/2 if the topic is unknown, and that she can understand almost all of her speech, as a familiar listener, after repetition and/or rephrasing. (R. at 687.)

Teacher 1 opined that M.J.B. has no problems in the domain of moving about and manipulating objects. (R. at 687.) In the domain of caring for herself, Teacher 1 opined that M.J.B. has a "very serious problem" handling frustration appropriately, being patient when necessary, responding appropriately to changes in her own mood, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help; a "serious problem" identifying and appropriately asserting emotional needs; and "no problem" taking care of personal hygiene, caring for physical needs, cooperating in or being responsible for taking needed medications, and using good judgment regarding personal safety and dangerous circumstances. (R. at 688.) Teacher 1 also noted that M.J.B.'s functioning changes after taking medication. (R. at 689.)

The second unidentified teacher ("Teacher 2"), stated that she saw M.J.B. for two years of first grade. (R. at 691.) Teacher 2 provided that M.J.B. was in first grade, had a kindergarten reading level, and a first-grade math and written language level. (*Id.*) Teacher 2 also assessed M.J.B.'s functioning in the relevant domains. Regarding acquiring and using information, Teacher 2 found that M.J.B. has a "very serious problem" reading and comprehending written material; a "serious problem" providing organized oral explanations and adequate descriptions; an "obvious problem" expressing ideas in written form, learning new material, recalling and

4

applying previously learned material, and applying problem-solving skills in class discussions; a "slight problem" comprehending oral instructions, understanding school and content vocabulary, understanding and participating in class discussions, and expressing ideas in written form; and "no problem" comprehending and doing math problems. (R. at 692.) When asked to explain, Teacher 2 stated, "[t]he first year of first grade was a struggle completing tasks she needed a lot of support. The second year of first grade she has been better at recalling info; writing her ideas." (R. at 692.)

In the functional domain of attending and completing tasks, Teacher 2 found that M.J.B. has an "obvious problem" focusing long enough to finish assigned activity or task, refocusing to task when necessary, working without distracting self or others, and working at reasonable pace/ finishing on time; a "slight problem" paying attention when spoken to directly, carrying out multi-step instructions, waiting to take turns, organizing own things or school materials, completing class/ homework assignments, and completing work accurately without careless mistakes; and "no problem" sustaining attention during play/sports activities, carrying out single-step instructions, and changing from one activity to another without being disruptive. (R. at 694.) Teacher 2 explained that M.J.B. has "better attention this year, however gets distracted easily (example: glue on fingers- distracted peeling it until hands are washed)." (R. at 694.)

With respect to interacting and relating with others, Teacher 2 found that M.J.B. has an "obvious problem" expressing anger appropriately; a "slight problem" playing cooperatively with other children and seeking attention appropriately; and "no problem" making and keeping friends, asking permission appropriately, following rules, respecting/obeying adults in authority, relating experiences and telling stories, using language appropriate to the situation and listener,

5

introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting meaning of facial expressions, body language, hints, and sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas in everyday conversation. (R. at 693.) Teacher 2 explained that M.J.B.'s "[b]ehavior is fine- just gets overly upset about things and takes awhile to calm down." (R. at 693.)

Teacher 2 found that Plaintiff has no problems in the domain of moving about and manipulating objects. In the domain of caring for herself, Teacher 2 found that Plaintiff has an "obvious problem" handling frustration appropriately, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood (e.g., calming self), and using appropriate coping skills to meet daily demands of school environment; a "slight problem" being patient when necessary; and "no problem" taking care of personal hygiene, caring for physical needs, cooperating in or being responsible for taking needed medications, using good judgment regarding personal safety and dangerous circumstances, and knowing when to ask for help. (R. at 696.) Teacher 2 explained that M.J.B. "gets upset sometimes and takes a little while to calm down, however big improvement from last year." (R. at 696.) Teacher 2 also stated that M.J.B.'s functioning changes after taking medication. (R. at 697.)

Additionally, on Plaintiff's 2016-2017 Report Card, an unidentified teacher left comments. For trimester 1, the teacher commented as follows:

> It has been a pleasure watching [M.J.B.] learn and grow during this trimester. She participates eagerly and positively in class and is a great team player during group activities. She is a responsible worker that completes class assignments with care. In reading, she demonstrates a greater knowledge of letter/sound relationships by sounding out unfamiliar words and memorizing some high-frequency words. [M.J.B.] is still not meeting grade level expectations in reading and would benefit from continued individualized instruction in the classroom and reading at least 20

6

minutes each night at home. In math, she has learned to use different strategies to solve problems. She is encouraged to practice addition facts to 20 for just 5 minutes a day! I am excited to see how much she will grow in trimester 2.

(R. at 682.)

For trimester 2, the teacher commented as follows:

[M.J.B.] has grown this trimester. She is beginning to take pride in her work and works harder to complete quality assignments. She has learned to persevere and is beginning to tackle new challenges with a more positive attitude. [M.J.B.] enjoys reading and can read for longer periods of time. She frequently uses the decoding and comprehension strategies that she's learning in class. [M.J.B.] is not meeting grade level standards for reading and is currently on level C. Continued small group instruction in the classroom, reading 20 minutes each night and reviewing sight words will help her continue to grow. In math, [M.J.B.] continues to strengthen her skills of using different strategies to solve addition and subtraction problems. Please continue to practice facts daily. Keep doing all the great things you are doing! I can hardly wait to see all the growth she will make this last trimester!

(R. at 682.)

**B.     State-Agency Reviewing Consultants**

State-agency reviewing consultants, Milford Schwartz, M.D., Tonnie Hoyle, Psy.D., and Lisa Lynch, M.A., CCC/SLP, reviewed M.J.B.'s records and determined that she does not meet, medically equal, or functionally equal the listings. (R. at 455.) They opined that M.J.B. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for herself. (R. at 453-54.) They found that she has a marked limitation in interacting and relating with others. (R. at 454.) They further found that she has no limitation in the domain of health and physical well-being. (R. at 455.) They concluded that the "child's medically determinable impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal

7

the listings." (R. at 455.)

State-agency reviewing consultants, Elizabeth Roseberry, M.D., Mary K. Hill, Ph.D., and Melissa Hall, MA, CCC/SLP, affirmed the above findings on reconsideration. (R. at 465-68.)

### III.  THE ADMINISTRATIVE DECISION

On February 26, 2018, the ALJ issued a decision finding that M.J.B. was not disabled within the meaning of the Social Security Act. The ALJ first set forth the three-step sequential evaluation process the Social Security Regulations require ALJs to employ in assessing whether an individual under the age of 18 is disabled. (R. at 131-33); *see also* 20 C.F.R. § 416.924(a).[1] At step one of the sequential evaluation, the ALJ found that M.J.B. had not engaged in substantial gainful activity since her application was filed. (R. at 133.) At step two, the ALJ concluded that M.J.B. had the severe impairments of speech and language delay and attention deficit hyperactivity disorder. (*Id*. at 133-34.) The ALJ concluded at step three that M.J.B. did

---

[1] The Social Security Regulations require the ALJ to comply with the following three-step sequential evaluation process to determine if a child is disabled:

> We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a).

not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, or that functionally equals the severity of the listings. (*Id.* at 134-145.) In finding that M.J.B.'s impairments do not functionally equal the severity of the listings, the ALJ discussed M.J.B.'s functioning in the six domains identified in the regulations, (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. (R. at 136-45); 20 C.F.R. § 416.926a(b). The ALJ found that Plaintiff had marked limitations in interacting and relating with others (R. at 140-41), and less than marked limitations in the other five domains of functioning (R. at 136-45). Because he found that M.J.B. did not have either marked limitations in two domains of functioning or extreme limitation in one domain of functioning, the ALJ concluded that M.J.B. has not been disabled since her January 23, 2015 application. (R. at 134-45.) In reaching this conclusion, the ALJ assigned "great weight" to the state-agency reviewing consultants' opinions. (R. at 136.) He assigned "partial" weight to the teacher questionnaires completed by unidentified sources. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ failed to properly evaluate the opinions of M.J.B.'s teachers, and as a result, erred in concluding that M.J.B.'s impairments do not functionally equal the listings. (Pl. Statement of Errors at 6, ECF No. 10.) She further asserts that the ALJ failed to explain which portions of the teacher questionnaires he credited. The Commissioner counters that the ALJ reasonably considered the teacher questionnaires and that substantial evidence supports the ALJ's finding that M.J.B. did not have an impairment or

combination of impairments that functionally equaled a listing. (Resp. in Opp'n at 3-14, ECF No. 15.) The undersigned agrees with the Commissioner and finds no error in the ALJ's consideration of the teacher questionnaires or in his finding that M.J.B.'s impairments do not functionally equal the listings.

In determining whether a child is disabled, the Commissioner must consider all evidence in the child's case record, including information from medical sources (such as the child's pediatrician, psychologist, and qualified speech-language pathologist) and nonmedical sources (such as the child's parents and teachers). 20 C.F.R. 416.924a(a). At step three, if a claimant has "a severe impairment or combination of impairments that does not meet or medically equal any listing, [the Commissioner] will decide whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). An impairment or combination of impairments "functionally equals the listings," if it is "of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* The Commissioner considers the claimant's functioning in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

When assessing the severity of a claimant's functional limitations, the Commissioner considers factors including, but not limited to: "(1) [h]ow well [claimant] can initiate and sustain activities, how much extra help [claimant] need[s], and the effects of structured or supportive settings . . .; (2) [h]ow [claimant] function[s] in school . . .; and (3) [t]he effects of [claimant's] medications or other treatment . . . ." 20 C.F.R. § 416.926a(a). The Commissioner considers the

claimant's functioning in all activities, *i.e*., everything she does at home, at school, and in the community, and will compare her performance of activities to the performance of other children who do not have impairments. 20 C.F.R. § 416.926a(b).

A claimant has a "marked" limitation in a domain when her impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "'more than moderate' but 'less than extreme,'" and "is the equivalent of functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* A claimant has an "extreme" limitation in a domain when her impairment "interferes very seriously with [her] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation is "'more than marked,'" and is the rating the Commissioner gives to "the worst limitations." *Id.* An extreme limitation is "the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

Here, the ALJ considered M.J.B.'s functioning in the six domains and reasonably concluded that she had less than "marked" limitations in acquiring and using information, attending and completing tasks, moving about and manipulating objects, caring for herself, and health and physical wellbeing (R. at 138-145), and "marked" limitations in her ability to interact and relate with others (R. at 140-42). In her Statement of Errors, Plaintiff specifically challenges the ALJ's finding that M.J.B. has less than "marked limitations" in the domains of acquiring and

12

using information and attending and completing tasks[2] in light of the teacher questionnaires. Plaintiff asserts that the ALJ arbitrarily assigned "partial" weight to the teacher questionnaires, without providing any explanation for which portions of the teacher questionnaires were accepted as credible. According to Plaintiff, the ALJ's lack of explanation or discussion "casts significant doubt" as to whether his finding that M.J.B. did not functionally equal the listings is supported by substantial evidence. (Pl. Statement of Errors at 11, ECF No. 10.) The undersigned disagrees.

As an initial matter, contrary to Plaintiff's contention, the ALJ was not required to specify which portions of the teacher questionnaires he accepted. M.J.B.'s teachers are not "acceptable" medical sources under the Social Security Regulations, and "[t]he Sixth Circuit does not require an ALJ to explicitly discuss his evaluation of evidence from a non-acceptable medical source." *Williams v. Comm'r of Soc. Sec.*, 1:15-cv-453, 2016 WL 4939374, at *5 (S.D. Ohio Aug. 4, 2016) (citing 20 C.F.R. §§ 416.913; 416.927(a)(2); SSR 06-03p; and *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2007)). Nonetheless, the ALJ specifically set forth the weight he assigned to the teacher questionnaires, explaining as follows:

---

[2] Plaintiff does not develop argument regarding the ALJ's consideration of M.J.B.'s limitations in any other domain. Accordingly, to the extent Plaintiff challenges the ALJ's findings regarding M.J.B.'s functioning in domains other than acquiring and using information and attending and completing tasks, her argument is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted)); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006) ("This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").

> The undersigned also considered the teacher questionnaires filled out by two unidentified sources provided at Exhibit 16E/4-19. While unidentified, it is expected that each of these professionals has had the experience of interacting, observing, and questioning/testing the claimant. As such, these responses were considered and give[n] partial weight, in the overall consideration of the domains below.

(R. at 136.) The ALJ also specifically discussed the teacher questionnaires when assessing M.J.B.'s functioning in the relevant functional domains. (R. at 137-38, 139-40, 141-42, 144.) Thus, contrary to Plaintiff's contention, the ALJ reasonably considered and explained the weight he assigned to the teacher questionnaires in determining whether M.J.B.'s impairments functionally equaled the listings.

The undersigned is also not persuaded that the ALJ failed to explain his rationale for determining that M.J.B. has less than marked limitations in attending and completing tasks and acquiring and using information. As set forth above, the state-agency reviewing consultants found that M.J.B. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for herself (R. at 453-54); marked limitation in interacting and relating with others (R. at 454); and no limitation in health and physical well-being (R. at 455). The ALJ assigned "great weight" to the state-agency reviewing consultants' opinions, explaining as follows:

> As for the opinion evidence, the undersigned considered the opinion of the Bureau of Disability Determination medical consultants expressed in Exhibit 1 A (*affirmed at 3A*). Although neither examining nor treating physicians, these experts are medical doctors and licensed psychologists with knowledge of the Social Security Administration's program and requirements. Their opinion is derived from and consistent with the medical evidence of record. Therefore, the undersigned gives the Bureau of Disability Determination opinion great weight.

14

(R. at 136.) Thus, the ALJ found that the state-agency reviewing consultants' opinions—which provide in part that M.J.B. has less than "marked" limitations in the domains of acquiring and using information and attending and completing tasks—are consistent with the record evidence and assigned those opinions "great" weight. Plaintiff's contention that "[t]he ALJ's 'analysis' seems to be nothing more than mere recitation of facts in the record and a conclusion" with "no effort to explain how the ALJ went from point A to point B" is therefore unpersuasive. (Pl.'s Statement of Errors at 13, ECF No. 10.)

In addition, in his discussion of the relevant functional domains, the ALJ identified other record evidence supporting his conclusion that M.J.B. had less than marked limitations in the domains of acquiring and using information and attending and completing tasks. With respect to M.J.B.'s ability to acquire and use information, the ALJ expressly discussed the teacher questionnaires, stating as follows:

> From an identified questionnaire, a source noted the claimant to have a slight to obvious problem with a number (most) of activities, though a "*very serious problem*" in reading and comprehending written material, for which the source indicated the claimant was receiving services from an interventional specialist (Exhibit 16E/5). The other unidentified source indicated the claimant demonstrated a "*slight*" to "*obvious*" problem with a number (most) of activities, though a "*serious problem*" in providing organized oral explanations and adequate descriptions and a "*very serious problem*" in reading and comprehending written material, though she demonstrated improvement during the second year of first grade (Exhibit 16E/13).

(R. at 137-38.) Although these questionnaires suggest some "serious" and "very serious" problems in the domain of acquiring and using information, the ALJ also considered significant evidence that supports a finding of less than marked limitations. For example, the ALJ considered that although M.J.B was retained in first grade, she then "was progressed to second

15

grade, with continued IEP supports." (R. at 138 (citing R. at 645, 1780-98)).) The ALJ also considered that school records reflected that M.J.B. was engaged in a general education curriculum, (R. at 137 (citing R. at 564-71)), and that, in 2014, a teacher reported that M.J.B. "was able to complete most classroom tasks with repetitions and verbal cues, was able to follow one-step directions, accurately answer simple questions and label/identify target vocabulary words, though she was functioning just below grade level for most academic tasks," (R. at 137 (citing R. at 566)). The fact that M.J.B. had an IEP and did not meet grade-level expectations in reading does not mean she has a marked impairment. *See e.g.*, *Figgs on behalf of J.J.B. v. Comm'r of Soc. Sec.*, No. 1:17-CV-481, 2018 WL 3751271, at *7 (S.D. Ohio Aug. 8, 2018) (explaining that the fact that child had an IEP and functioned below grade level does not mean he has a marked impairment). The ALJ further considered that testing in 2015 failed to reveal concerns about M.J.B.'s general pre-academic skill level (R. at 137 (citing R. at 755, 1433-46)), and that school records showed that M.J.B. "was scoring within at least average ranges with a number of testing measures, such as the Kaufman Assessment Battery for Children, Second Edition, though with some weakness in comprehension (KABC-II)," (R. at 137 (citing R. at 4F; 1470-72)). Additionally, although not specifically discussed by the ALJ, M.J.B.'s report cards from 2016-2017 demonstrate overall improvement, including in reading. (R. at 682.) Based on the foregoing, the undersigned finds that substantial evidence supports the ALJ's decision to assign great weight to the state-agency reviewing consultants' opinions and to conclude that M.J.B. had less than marked limitations in the domain of acquiring and using information.

Substantial evidence also supports the ALJ's conclusion that M.J.B. has less than marked limitations in the functional domain of attending and completing tasks. Again, the ALJ

considered a wide-range of evidence and specifically discussed the teacher questionnaires in reaching this conclusion. The ALJ first discussed record evidence from before 2015 and stated "[i]t is of significant note that when medication was initiated and increased as needed, the claimant displayed improvements at school." (R. at 139.) The ALJ appropriately considered the effect of M.J.B.'s medications on her functioning. *See* 20 C.F.R. § 416.926a(a) (providing that the Commissioner will consider the effects of medication or other treatment on the claimant's functioning). The ALJ also considered the following record evidence:

> During an IEP reevaluation, the claimant was noted to be cooperative, interactive and participate freely during her speech therapy (Exhibit 15E/19). She was noted to participate eagerly and positively in class, be a great team player during group activities and a responsible worker that completes class assignments with care (Exhibit 15E/26). The claimant was noted as also beginning to take pride in her work, working harder to complete quality assignments, learned to persevere and was beginning to tackle new challenges with a more positive attitude. Though, an unidentified source indicated that they felt the claimant [has] a "*slight*" to "*obvious*" problem with a number (most) of activities; though a "*serious problem*" with focusing long enough to finish assigned activity or task, carrying out multi-step instructions and waiting to take turns and a "*very serious problem*" in refocusing to task when necessary and working at reasonable pace/finishing on time (Exhibit 16E/6). Another unidentified source indicated that the claimant had "no" to "slight" problems with a number (most) of activities; though an "*obvious*" problem with focusing long enough to finish assigned activity or task, refocusing on task when necessary, working without distracting self or others and working at reasonable pace/finishing on time, though the source included "*Better attention this year, however, gets distracted easily (Example: glue on fingers- distracted by peeling it until hands are washed)*" (Exhibits 16E/15). During most appointments, the claimant is typically described as happy and cooperative (see e.g. Exhibit 5F). During testing she has been noted to be a willing and eager participant, friendly and interacted appropriately with the examiner, asked appropriate questions and maintained her motivation throughout tasting [sic] sessions and required limited redirection; however, the few times she was redirected, she responded positively and immediately (Exhibit 8F/22). Though, it is of note that Ms. Bill's report and information from the claimant's teacher provided that she demonstrated behaviors of emotional distress, upsetting thoughts, hyperactivity, impulsivity, perfectionistic and compulsive behaviors within very elevated range in the home and classroom settings, though average

17

> adaptive functioning (see Exhibit 8F/28-29). It is notable that despite the varied reports, the evaluators did not find behavioral supports to be warranted and it was noted that the claimant was not exhibiting any behaviors that adversely affect or impede her progress in the general education curriculum (Exhibit 8F/31). Additionally, the claimant's teacher noted that the claimant was a hard-worker, wants to please and typically follows directions and completes her work in a timely manner; is often able to link new information to previously learned information, locate appropriate materials, categorize and puts information together and can retell a story in the correct order, as well as able to sequence information, create a logical story, turn in assignments on time and can follow directions presented visually (Exhibit 8F/32). Though she also indicated that the claimant seldom follows more than one step directions correctly and seldom uses rote memory skills for math and reading, does not self-check her work before turning it in and does not recognize simple mistakes in her writing or math.

(R. at 139-40.) As demonstrated by the ALJ's lengthy discussion, he thoroughly considered the teacher questionnaires and other record evidence when assessing M.J.B.'s limitations in the domain of attending and completing tasks. Upon weighing the evidence, the ALJ reasonably concluded that M.J.B. has less than marked limitations in this domain. This finding is supported by substantial evidence, including the state-agency reviewing consultants' opinions and evidence demonstrating that M.J.B.'s functioning improved with medication and that she was promoted to second grade.

Although Plaintiff points to evidence that could support a contrary conclusion, the undersigned is not persuaded that remand is necessary in view of the countervailing record evidence upon which the ALJ relied. Rather, "there is a zone of choice within which the decision-makers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion

reached."); *see also Trammell v. Comm'r of Soc. Sec.*, No. 1:13CV794, 2015 WL 1020211, at *6 (S.D. Ohio Mar. 9, 2015) ("That the evidence could be interpreted to support either a 'marked' or a 'less than marked' finding does not mean that it must be interpreted in Plaintiff's favor.") Here, the ALJ considered the record as a whole, including the teacher questionnaires, and identified substantial evidence supporting his finding that M.J.B.'s impairments did not functionally meet a listing. The undersigned will not re-weigh the evidence. Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**. (ECF No. 10.)

## VI. DISPOSITION

Based on the foregoing analysis, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision **AFFIRMED**.

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

19

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

                                         /s/ *Chelsey M. Vascura*
                                         CHELSEY M. VASCURA
                                         UNITED STATES MAGISTRATE JUDGE